PETER McMAHON *vs.* FREDERICK J. CREAN ET AL.

*Tax Sales—Title of Purchaser Prima Facie Valid—Preliminary
Notice of Sale—Place of Making Sale Under Former Stat-
ute—Act Validating Deeds by Tax Collectors for
Property Sold by Their Predecessors.*

The purchaser at a tax sale, which was made in compliance with
the statute, has a new and complete title to the land and all
prior encumbrances and titles of private persons are extin-
guished by the sale.

Since the enactment of Code, Art. 81, sec. 53 (Act of 1872, ch.
384), it is not necessary for the purchaser at a tax sale to
show affirmatively that all the proceedings under which the
sale was made were regular.  Under that statute, when the
Court ratifies and confirms a tax sale reported to it by the
Collector of Taxes, the purchaser acquires a good *prima facie*
title, and the burden of proof to show that the proceedings
were irregular is thrown upon the person attacking the sale.

The local law of Baltimore (City Code, 1879), Art. 47, sec. 44,
provided that no sale should be made by the Collector for
non-payment of taxes until he has first given notice to the
person in arrear, or left at his residence, a statement of the
indebtedness and not less than thirty days' notice of his inten-
tion, if the bill be not paid, to enforce payment thereof.  In
this case the Collector's report of the tax sale stated that he
had given notice to the delinquent owner that if the bill ren-
dered be not paid within thirty days it would be *subject to*

*distraint or execution.* But the tax bills filed as exhibits with
the report of sale showed that they contained a notice in red
ink to the effect that if not paid within the time limited, pay-
ment thereof *will be enforced by distraint or execution,* and
these were copies of the bills as rendered. *Held,* that this pre-
liminary notice of the sale actually given was in compliance
with the statute.

In 1879, when the tax sale in this case was made, the general
law (Code of 1860, Art. 81, sec. 50; Rev. Code of 1878, Art.
11, sec. 49) provided that tax sales should be made on the
premises or at the Courthouse door. The Act of 1878, ch.
227, relating to such sales in Baltimore City, contained no di-
rection as to the place where the sale should be made. *Held,*
that the general law, being in conflict with the local, did not
control in this respect in said city; that under the local law
the place of the sale was left to the discretion of the City Col-
lector, and that a sale made by him at the Exchange Sales
Rooms, where it was customary to make such sales, after due
notice by advertisement, was valid.

A collector of taxes executed a deed to the purchaser for the
property sold for taxes by his predecessor in office, whereas
such deed should have been executed by the collector who
made the sale. Afterwards the Act of 1904, ch. 281, provided
that whenever any property in Baltimore City has been sold
for taxes by one City Collector, but the deed therefor executed
by his successor in office, such conveyance shall be as valid as
it would have been if made by the collector who made and
reported the sale. *Held,* that this Act is a proper exercise of
the legislative power and does not violate any right of the
owner of the property so sold.

*Decided, per curiam, December 9th, 1908. The following
opinion was filed January 13th, 1909.*

Appeal from the Court of Common Pleas (STOCKBRIDGE,
J.).

The cause was argued before BOYD, C. J., BRISCOE,
PEARCE, BURKE, THOMAS, WORTHINGTON and HENRY, JJ.

*Thomas G. Hayes* (with whom was *Henry J. Broening* on the brief), for the appellant.

This is an action of ejectment brought by the appellees, as plaintiffs, against the appellant, as defendant. The property involved is leasehold property Nos. 40 and 42 Marsh Market Space, in Baltimore City. The title of the appellees is that of remaindermen under the will of Edward Burns. The appellant's title is a tax title derived as follows: The property in fee was sold by Baltimore City through City Collector Webb on October 15th, 1879, for taxes in arrears; the City was the purchaser at that sale. Afterwards the tax deed was made to the City by City Collector Taylor, and on March 19th, 1884, the City sold the said property at public sale to the appellant for $1,300, and on said date conveyed the property by a fee simple deed to the appellant, and on the date of said deed the appellant went into possession of the property and has had possession ever since. The appellees as remaindermen from the accrual of their title, being out of possession for only about sixteen years, are not barred by limitation, and they attack the appellant's tax title upon the ground that the said tax title is in several respects irregular, void and invalid. The three special grounds assigned for the invalidity of the appellant's tax title are:

1. The *place* of tax sale, to wit, the Real Estate Exchange Sales Rooms, was not the place assigned for such tax sales under the law of the State.

2. That the notice to the delinquent tax debtor given in this case printed in red ink across the face of the tax bills was not as prescribed by law.

3. That the curative Acts of 1904, chapters 281 and 386, which were intended to remedy the defect of the tax deed for said property by City Collector Taylor to the Mayor and City Council of Baltimore, and not by City Collector Webb, who made the tax sale, was void because these Acts destroyed a vested right of the appellees. The lower Court ruled, that for the first two reasons given the tax proceedings were invalid, and gave the appellant no title whatsoever to the prop-

erty in question, and the lower Court refused to pass on the third objection.

From the judgment of the lower Court, giving in this eject-ment action, for the reason stated, the leasehold property to the appellees, the appellant appealed and contends that the learned lower Court committed error in ruling that the *place* and *notice* of said tax sale were contrary to law. Considering now these three objections to the tax sale in question in their order, we have:

I. *Place:* The lower Court held that the *place* at which the tax sale should have been held was *"either on the premises or at the Courthouse door,"* as prescribed by Code of Public Gen-eral Law of 1860, Article 81, section 50, which provision was also in the Code of 1878, Article 11, section 49, and that as said tax sale was at the Real Estate Exchange Rooms, and not on the premises or at the Courthouse door, the tax sale was null and void. The answer of the appellant to this ruling is that the learned lower Court fell into a patent error in hold-ing that this Public General Law applied or prescribed the mode of procedure or place where such tax sale should be had. The matter of land or ground tax sales for taxes in ar-rears in Baltimore City was prescribed by a local law for Baltimore City, and that local law governing this tax sale was the Act of 1878, chapter 227; and that this latter Act wisely left the place of land tax sales in the city to the discretion of the City Collector, and that his selection of the Exchange Sales Room, which was fully named and described in the ad-vertisement of sale, was in perfect conformity with this Act of 1878.

II. *Notice:* The learned lower Court held that the require-ment of the notice to delinquent taxpayers was prescribed by Ordinance of Baltimore City No. 46, of June 2, 1862 (Balti-more City Code of 1879, Article 47, section 44), and that it had not been complied with by the City Collector, and this defect made the tax sale null and void. The appellant denies that this ordinance had anything whatever to do with the terms of this notice, because a General Public Law, Act 1874,

chapter 483, section 48, prescribed what this notice should
contain, and that the notices printed across the face of two of
the tax bills was an exact compliance with what this Court in
*Textor* v. *Shipley,* 86 Md 441, 442, said was what this gen-
eral law requires the notice to contain; and that the notice on
the third tax bill, while changed in a minor respect in lan-
guage, was a substantial compliance with what this Court had
said in *Textor* v. *Shipley, supra,* was sufficient. The printed
notices across the face of the tax bills which had been ap-
proved in *Textor* v. *Shipley, supra,* was as follows: "Notice—
If this bill is not paid within thirty days from delivery, pay-
ment will be enforced by distraint or execution." And the no-
tice printed on the third tax bill, and which the appellees
claimed did not comply with the law, was as follows: "No-
tice—If this bill is not paid within thirty days from delivery,
*it will be subject* to distraint or execution." The legal effect
and force of this last-above notice is exactly the same as the
first two. Their substance is in every respect legally the
same. There is not the slightest force in the contention of the
appellees that the above-last notice was not in conformity with
the law prescribing the notice. The objection is hypercrit-
ical.

. III. *Curative Acts:* The curative Acts of 1904 were passed
by the Legislature to meet the opinion of this Court as given
in the case of *Taylor* v. *Forest,* 96 Md. 529, by which opinion
this Court decided that the report of the tax sale as well as
the tax deed to the purchaser must be made by the City Col-
lector who made the tax sale, and not by his successor in office.
As it was found that in most of the tax sales made in Balti-
more City neither the report of past tax sales nor the tax deed
to the purchaser had been made by the City Collector who
made the tax sale, but by his successor in office, to remedy
this irregularity or defect in the title of a large majority of
past tax titles, these Curative Acts of 1904, chapters 281 and
386, were passed. The title of the Act of 1904, chapter 286,
conclusively shows that its purpose and object was both retro-
spective and prospective. This title was as follows: "An Act

to make *all* tax sales in the City of Baltimore made by one City Collector and reported, and the property conveyed by his successor in office, or made and reported by one City Collector and property conveyed to (by) his successor in office."

The tax sale involved in this case was made by City Collector Webb, and the tax deed for property sold at tax sale was made to the Mayor and City Council of Baltimore by City Collector Taylor, Mr. Webb's successor in office; hence, it was necessary to invoke the curative effect of this Act in order to validate the tax title which gave title to the appellant. The appellees insist that this cannot be done, because they claim to permit this Act to have this curative effect on the tax title in question would deprive these appellees of a vested right. The vested right so destroyed as claimed by the appellees is solely and simply permitting the successor in office of the City Collector who made the tax sale to make the tax deed. To claim that the curing of a simple irregularity in the procedure of a public official in making a tax sale, by the Legislature which regulated originally the whole tax procedure, is the destruction of a vested right, does seem calculated to raise a smile on the face of one who hears the statement. If the Legislature had the original power, as it undoubtedly had, as shown by the case of *Taylor* v. *Forest, supra,* to prescribe which City Collector should report the tax sale and make the tax deed, the Legislature unquestionably had also the power to remedy any defect or irregularity of such City Collector by a curative act. It is difficult to conceive how the remedying of such irregularity or omission can be the destruction of a vested right. All the authorities universally hold that the Legislature has the power to remedy or cure such an omission or neglect of duty of a public official. Some of the many authorities which support the above statement are the following: 6 *A. & E. Encyl. Law,* 940; 26 *A. & E. Encyl. Law,* 998, 999; *Thomas* v. *Lee County,* 3 Wall. 331; *Randall* v. *Keiger,* 23 Wall. 14; *Mattingly* v. *District of Columbia,* 97 U. S. 690; *Steel Co.* v. *Erskine,* 39 C. C. A. 173, note. And the following Maryland cases conclusively establish that the Curative

Acts of 1904 destroyed no vested rights of the appellees in the property in question: *Grove* v. *Todd,* 41 Md. 641; *Williar* v. *Butchers' Assoc.,* 45 Md. 560; *O'Brian* v. *Balto. County,* 51 Md. 24; *Madigan* v. *Building Assoc.,* 73 Md. 321; *Wilson* v. *Simon,* 91 Md. 7; *Miners' Bank* v. *Snyder,* 100 Md. 57.

6 *A. & E. Encyl. Law, supra, thus states the rule of law* as to curative acts: "The general rule has often been declared that the Legislature may validate retrospectively any proceedings *which they might have authorized in advance;* and it is immaterial that such legislation *may operate to divest an individual of a right of action existing in his favor,* or subject him to a liability which does not exist originally."

26 *A. & E. Encyl. Law, supra,* thus states the same rule of law as to all curative acts being retroactive and that legislatures could validate any act it might have originally authorized: "Although necessarily retroactive, curative acts are not for that reason invalid, for the general rule is that the Legislature *can validate any act which it might have originally authorized.* Curative acts apply to pending suits unless they are expressly excepted." In *Thompson* v. *Lee County, supra,* it is said: "If the Legislature possessed the power to authorize the act to be done, it could by a retrospective act cure the evils which existed, because the power thus conferred had been irregularly executed. The question with the Legislature was one of policy, and the determination made by it was conclusive."

The above quotation was made a part of the opinion of this Court in *O'Brian* v. *Baltimore County, supra.* In *Williar* v. *Butchers' Association, supra,* this Court has thus defined a *vested right:* "A vested right of action is property in the same sense in which tangible things are property, and is equally protected against arbitrary interference. *When it springs from contract or from the principles of the common law, it is not competent for the Legislature to take it away."* What City Collector shall report a tax sale or make a tax deed proceeds neither from contract nor the principles of the common law, as stated in the case of *Taylor* v. *Forest, supra;* it rests solely

in the power of the Legislature; hence any curative acts to remedy or cure irregularities of the exercise of this power originally conferred and prescribed by the Legislature cannot be said to destroy vested rights.

IV. ·*Tax Sale Destroyed All Existing Claims and Liens on Said Property:* Since about 1874 the law then passed made all tax sales reported to the Circuit Court of Baltimore City and ratified by that Court *prima facie* good and· valid, and put upon the party objecting to the tax sale the burden to show a failure to comply with the law in making said sale, and no presumption can be invoked against the regularity or validity of the sale. *Cooper* v. *Holmes,* 71 Md. 26; *Guisebert* v. *Etchinson,* 51 Md. 478; *Ex Parte Tax Sale,* 172, 42 Md. 196; *Margraff* v. *Cunningham,* 57 Md. 585; *Richardson* v. *Simpson,* 82 Md. 159; *Stuart* v. *Meyer,* 54 Md. 454.

Nothing whatever has been shown by the appellees to overcome this *prima facie* case of regularity and validity of the tax sale in question, and hence the appellant under said tax sale has a good and valid fee simple title to the property in question.

What, now, is the legal force and effect of the appellant's tax title on the leasehold estate of the appellees? It is to wipe the title of appellees as remaindermen out of existence. "If the tax deed is valid, then from the time of delivery it clothes the purchaser, not merely with the title of the person who had been assessed for the taxes and had neglected to pay them, but with a new and complete title to the land, under an independent grant *from the sovereign authority,* which bars or extinguishes all prior title and incumbrances of private persons and all equities arising out of them." *Hefner* v. *Ins. Co.,* 123 U. S. 751. The above exact quotation has been made a part of two opinions of this Court, namely, in *Textor* v. *Shipley,* 86 Md. 438, and *Hill* v. *Williams,* 104 Md. 604.

*S. S. Field* and *Frank Driscoll* (with whom was *John E. Dempster* and *Gill & Preston* on the brief), for the appellees.

This was an action of ejectment. Plaintiffs' evidence has

already been passed on by this Court and has been held to show *prima facie* a title in plaintiffs. *Crean* v. *McMahon*, 106 Md. 507.

That was plaintiffs' appeal. The case was remanded for new trial and a verdict and judgment were rendered for plaintiffs for two-thirds undivided interest and damages for mesne profits, $1,005.58. There are a number of exceptions to evidence, but the principal point is involved in the Court's actions on the prayers and motion at the end of the case, and is whether the tax sale title relied on by defendant is void or valid. Another question was whether the plaintiffs were entitled to two-thirds or five-sixths; a third involved the rule for calculating mesne profits; and still another question arose as to the form of the verdict.

In ratifying tax sales, Court acts under *special* jurisdiction, and unless the *recitals of the record show* a substantial compliance with all preliminary requisites of the law, the tax sale and title thereunder will be void. *Guisebert* v. *Etchison,* 51 Md. 487; *Taylor* v. *Forrest,* 96 Md. 534; *Richardson* v. *Simpson,* 82 Md. 155.

In the tax proceedings set up by defendant in this case, the following defects appear, mentioning them in the order of time without regard to the order of importance:

(1) The preliminary notice was insufficient. It was: "If this bill is not paid within thirty days from delivery *it* will be subject to distraint or execution."

Literally this means nothing, but reading it to mean that *the property* will be subject to distraint or execution, it simply tells what the *law will authorize the collector* to do. But the law requires the collector to notify the taxpayer what *he intends to do,* not what the law would authorize him to do, and he might or might not do. Everyone is presumed to know the law, but cannot know the collector's intention, until he tells them, and therefore the law requires the collector to put on the tax bill notice of what he intends to do. "A notice annexed thereto that unless the taxes so due are paid within thirty days thereafter *he will proceed* to collect the same by

way of distress or execution to be levied on said real or personal property." *Rev. Code,* 1878, Art. 11, sec. 48. Compare *City Code,* 1879, Art. 49, sec. 44, page 1084.

This is a fatal defect. *Guisebert* v. *Etchison,* 51 Md. 487 (see 3rd prayer on page 481, approved on page 488); *Benzinger* v. *Gies,* 87 Md. 707-8.

Two of the tax bills appearing in the record have the right notice on them, but the third has a defective notice, like that in the report. It looks as though they used the right notice in 1876 and 1877, and began to use the insufficient one in 1878, and therefore naturally used the insufficient one in 1879, when the notice was served on Mr. Crean. At all events, the only evidence of what notice was on the tax bills delivered to Mrs. Crean is the statement in the report: "That upon each of such bills so delivered was printed a notice, as follows: 'If this bill is not paid within thirty days from delivery, it will be subject to distraint or execution.' "

The report does not say that the bills *filed with the report* are copies of the bills *delivered to Mrs. Crean,* but merely that the bills filed contain copies of the entries on the assessment books.

Accordingly, on these bills in the record you find no commissions, interest, penalty, or footing; all of which were, of course, on the bills delivered Mrs. Crean.

(2) The notice of sale was insufficient, if the general law on that subject governs, because that requires the notice to be set up at the Courthouse door, which was not done. *Rev. Code,* 1878, Art. 11, sec. 49; *Baumgartner* v. *Fowler,* 82 Md. 632, 640.

But if the Court considers the local law exclusive, then the notice was sufficient. *City Code,* 1879, Art. 49, sec. 5.

(3) Sale void because made at Real Estate Exchange, whereas law requires it to be made at Courthouse door or on premises. *Revised Code,* Art. 11, sec. 49; *Code,* 1860, Art. 81, sec. 49.

The general law governs the place of sale because there was no provision of the local law on that point. *City Code,*

1879, Art. 49, sec. 5; *Cooper* v. *Holmes,* 71 Md. 26; *App. Tax
Ct.* v. *W. M. R. R.,* 50 Md. 296.

(4) No title passed because *whole* purchase money not
paid. *Rev. Code,* 1878, Art. 11, sec. 51; *City Code,* 1879,
Art. 49, sec. 48, and sec. 7, and sec. 10. Report of collector
shows property sold for $1,025.00, and only $326.25 paid.

(5) Title defective because deed not made by collector who
made sale, as required by *City Code,* 1879, Art. 49, sec.7, sec.
48.

The purchaser has no *legal* title until he gets the Collector's
deed. *Young* v. *Ward,* 88 Md. 421; *City Code* (1879), Art.
49, sec. 49, page 1086.

And the Collector who made the sale must make the deed
(as the law then was); a deed by a subsequent Collector con-
veyed no title available to the purchaser in ejectment. *Taylor*
v. *Forrest,* 96 Md. 533.

The Court below held the title set up by defendants void
because of the first and third defects above mentioned. That
these were fatal defects is demonstrated by the clear and
logical opinion of the Court below, which gives full references
to the law then governing tax sales.

That the fifth defect, that the deed was not made by the
Collector who made the sale is fatal, has been decided by this
Court in *Taylor* v. *Forrest,* above quoted. But the defendant
relied on the Act of 1904, chapter 281, to cure this defect.
We submitted to the Court below by our fourth and fifth pray-
ers that it was not within the power of the Legislature to
validate a prior tax proceeding which was void, and by legis-
lative fiat give defendant a title when before the Act he had
none.

The situation seems to us clear. On the day before this Act
of 1904 was passed plaintiffs had a title on which they could
recover in ejectment and McMahon had no title, as expressly
decided by this Court in *Taylor* v. *Forrest.* Now, if after the
Act McMahon has a title by which he can defeat plaintiffs'
ejectment, then the Act of the Legislature has divested plain-
tiffs of their title—their vested rights in land—and has vested

a title in defendants. This the Legislature could not do. *Johnson* v. *Taylor,* 10 L. R. A. (New Series), 818; *Wilderman* v. *Balto.,* 8 Md. 551; *Rock Hill College* v. *Jones,* 47 Md. 1, 17; *Remington* v. *Met. Bank,* 76 Md. 546; *Williar* v. *Butchers' Assn.,* 45 Md. 546; *Blackwell on Tax Titles,* 953; *Foster* v. *Foster,* 129 Mass. 559, 561; *Hodgson* v. *Burleigh,* 4 Fed. Rep. 127; *Dingey* v. *Paxton,* 60 Miss. 1057; *Roche* v. *Waters,* 72 Md. 264; *Garrison* v. *Hill,* 81 Md. 556.

BURKE, J., delivered the opinion of the Court.

This is a suit in ejectment instituted in the Court of Common Pleas by four of the children of Charles and Catherine Crean, deceased. The plaintiffs claim title to the lot sued for under the will of Edward Burns, who died seized thereof in 1862. The lot was a leasehold, subject to an annual ground rent of two hundred and forty dollars. The title to this leasehold was acquired by Edward Burns under an assignment from Benjamin V. Richardson. The property is located on the west side of Market Space in Baltimore City, and at the time of the death of Edward Burns was improved by two brick houses, known as Numbers 40 and 42 Marsh Market Space. Burns bequeathed the property to Charles and Catherine Crean during their lives, and immediately after the death of the survivor "unto the living issue of the aforesaid Charles and Catherine Crean, share and share alike, absolutely." Charles Crean died in 1884, and Catherine, the surviving life tenant, in 1889.

. The State and City taxes on this property for the years 1876, 1877 and 1878 being in arrears and unpaid, it was sold on October 15th, 1879, for non-payment of these taxes by Charles Webb, the Collector of City and State Taxes. The sale was made at the Exchange Building, on Second Street, in the City of Baltimore, and was sold to the Mayor and City Council of Baltimore in fee, $1,025.00. The sale was reported by Mr. Webb, the Collector, to the Circuit Court for Baltimore City, and was by that Court finally ratified and confirmed on the 22nd day of September, 1882. The prop-

.erty was conveyed to the Mayor and City Council of Balti-
more by Henry S. Taylor, Collector, by deed dated December
.7, 1883, and on March 19, 1884, by deed of that date, the
.City, in consideration of the sum of thirteen hundred dollars,
granted and conveyed the property to the defendant in this
suit, who paid the full purchase price and took possession of
the property on the date of the deed, and has been in continu-
ous possession to the present time. At the date of the pur-
chase by the defendant the property was in bad condition and
was not tenantable, and in order to put it in condition to be
rented Mr. McMahon was obliged to spend from sixteen to
eighteen hundred dollars for necessary repairs. The improve-
ments placed by him upon the property were destroyed by
the great fire of 1904, and the property was rebuilt by the
defendant at a cost of about five thousand dollars.

The case was tried below before the Court without the inter-
vention of a jury and resulted in a verdict and judgment in fa-
vor of the plaintiffs and the defendant has brought this appeal.
In a *per curiam* opinion filed December 9th, 1908, we said:
"It is admitted that the suit must fail if the appellant ac-
quired a good title under the tax sale and the deed mentioned.
The Court below held that the defendant took no title under
the tax sale—first, because the preliminary notice given was
insufficient, and, secondly, because the place of sale was not
that authorized by law. The property was sold at the Ex-
change Sales Room, but, in the opinion of the Court below,
the property could only be sold either on the premises or at
the Courthouse door of the City. Some additional reasons
have been urged against the defendant's title. It is insisted
he took no title under the deed because the deed was not
made by the Collector who made the sale. We hold that the
proceedings under which the tax sale was made show a suffi-
cient compliance with all the prerequisites of the law relat-
ing to tax sales in Baltimore City, and that the defect urged
against the deed upon which the defendant relies has been
cured by subsequent legislation. We decide that the defend-
ant has shown a good title to the land sued for, and that the

judgment must be reversed without awarding a new trial." That judgment was accordingly entered.

Assuming for the moment the validity of the proceedings under which the tax sale was made, and that the deeds of December 7th, 1883, and March 19, 1884, operated to pass the legal title to the property first to the Mayor and City Council and then to the defendant, it cannot be questioned that the last-named deed afforded the defendant a complete bar to recovery in this suit. We said in *Textor* v. *Shipley,* 86 Md. 438, that "the title of the defendant is founded upon and derived from the tax sale (*Burroughs on Taxation,* 346; *Hussman* v. *Durham,* 165 U. S. 147; *Hefner* v. *North Western Ins. Co.,* 123 U. S. 751), for although he did not purchase at the tax sale, his grantor, the City, did. In *Hefner* v. *The Insurance Company, supra,* it is said: "If the tax deed is valid, then from the time of its delivery it clothes the purchaser, not merely with the title of the person who had been assessed for the taxes and had neglected to pay them, but with a new and complete title in the land, under an independent grant from the sovereign authority, which bars and extinguishes all prior titles and incumbrances of private persons, and all equities arising out of them." *Hill* v. *Williams,* 104 Md. 604; *Hill* v. *McConnell,* 106 Md. 574.

Before the passage of the *Act of 1872, chapter 384* (Code, 1904, Art. 81, sec. 53), which required the Collector to report the sale, together with all the proceedings had in relation thereto to the Court for confirmation, a sale made by a Collector of Taxes could only be supported upon it being made to appear *affirmatively* that all the provisions of the statute, authorizing the sale, had been strictly complied with. The power of sale vested in a Collector of Taxes is a naked power, specially conferred by statute, to be exercised under a proceeding *ex parte* in its character, and the effect of which is to divest a citizen of his property without his consent, and often without his actual knowledge. It was therefore established, as an indubitable principle, that a purchaser, who claimed under a power of this nature, should show affirma-

tively and positively the regularity of the proceedings. upon which his title depended. *Alexander* v. *Walter,* 8 Gill, 239-260; *Williams* v. *Payton,* 4 Wheat. 77; *Thatcher* v. *Powell,* 6 Wheat. 119.

But to relieve the purchaser of this *onus* and to give encouragement to purchasers at tax sales, the statute now in force (Act of 1874, chapter 483, section 51) provides that the Collector shall report the sale and the proceedings in relation thereto to the Courts mentioned in the. Act; and the Court, to which such report shall be made, shall examine the said proceedings, and if the same *appear to be regular,* and the provisions of law in relation thereto have been *complied with,* shall order notice to be given by advertisement, etc., to show cause, if any they have, why said sale shall not be ratified and confirmed; and if no sufficient cause be shown against the ratification, "the said sale shall, by order of said Court, be ratified and confirmed, and the purchaser shall, on payment of the purchase money, have a good title to the property sold." This statute confers upon the Courts designated a special and limited jurisdiction, which attaches upon the report of the Collector; and though the sale may be confirmed by the Court, the order of confirmation operates only to relieve the purchaser of the *onus* of proof, and to cast the *onus* of showing the illegality of the proceedings upon the party resisting the sale. The effect, therefore, of the order of ratification is only *prima facie* in support of 'the sale. not conclusive; the sale, under the order of confirmation, affording evidence of a good title, until successfully assailed by evidence showing illegality in the proceedings upon which it is founded. *Guisebert* v. *Etchison,* 51 Md. 478. Until such proof is offered by the assailing party, the sale, if ratified and confirmed, stands good and effective, by operation of statute. *Steuart* v. *Meyer et al.,* 54 Md. 465, 466, 467.

It is only necessary that there shall be a substantial compliance with the tax law under which the sale was made. *Guisebert's Case, supra; Textor* v. *Shipley, supra.* The Court will presume that the Collector has discharged his duty, and

no presumption will be invoked against the validity of the proceedings. But where it appears, by the record, or by proof that material and substantial provisions of the law have not been observed in making the sale it will be treated as utterly null and void. Under the Public Local Law of Baltimore City (City Code, 1879, Art. 47, section 44), no sale could be made by the Collector for the payment of taxes until he has "first given to the person or persons so in arrears, or has left at his, her, or their residence, or last known residence, or if neither can be found on the premises, a statement of his, her or their indebtedness, and not less than thirty days' notice of his intention, if the bill is not paid within the time named, to enforce payment thereof."

In this case the property was assessed to Mrs Crean, one of the life tenants, and the bills for taxes setting forth the amount of the taxes due on the property to the State and City, and specifying the years for which they were due, were delivered to her. It is true that in the report of the Collector it is stated that on each of the bills delivered to her there was a printed notice stating that if this bill is not paid within thirty days from delivery it will be subject to distraint or execution. Such a notice would be insufficient, because it is not such as the law requires, and if nothing else appeared by the record we would be constrained to hold the sale void. But looking at the whole record of the tax proceedings, it is apparent that this statement in the report of sale is erroneous, as two of the tax bills filed as exhibits with the report of sale contain a notice, printed in red ink across the face of each bill, to the effect that if the bill is not paid within thirty days from the delivery, payment thereof will be enforced by distraint or execution. These exhibits are copies of the entries in the assessment books of the City, and, as we understand the report, they are identical with the bills delivered to the owners. If, however, there should be any doubt upon this point, it should be resolved in favor of the validity of the sale, in the absence of satisfactory proof that this notice was not given. We are of opinion that these tax bills and

the notice printed thereon show the character of the prelimi-
nary notice given by the Collector, and are sufficient to grat-
ify the requirements of the law in this respect.

*As to the place of sale.* The property was sold at the Ex-
change Sales Room. This was held by the learned Judge
below to be a defect which rendered the sale void. He held
that under *Article 11, section 49 of the Code of 1878*, the only
places at which tax sales in the City of Baltimore could be
made were either on the premises or at the Courthouse door
of the City. It has not been the custom in the city to make
tax sales at either of these places, nor has it been the under-
standing of the City authorities that the law imposed such a
requirement. Such a construction would unsettle many tax
titles. This consideration, it is true, should not control the
action of the Court if it appears that a plain mandate of the
law has been disregarded; but the Court should not be insen-
sible to the serious consequences which would inevitably result
from such a construction.

In making this sale the Collector proceeded under the *Act
of 1878, chapter 227,* which made provisions for the sale of
ground in Baltimore City for non-payment of taxes. That
Act provided that "whenever it shall become necessary to
sell any part or parcel of ground in the City of Baltimore,
improved or unimproved, for the payment of any taxes or
assessment of any nature or kind whatever, levied or charged,
the Collector shall first give notice by advertisement published
once a week for four successive weeks in two of the daily
newspapers published in said City, one of which shall be in
the German language, that he will sell at public auction on
the day in said advertisement mentioned; said notice shall
state the name of the person, when known, to whom such par-
cel of ground is assessed, the amount of taxes due on the
same, and what improvements, if any, are on said parcel of
ground; and in any such notice it shall be sufficient to de-
scribe the parcel of ground as located upon whatever official
plat of the City the said Mayor and City Council of Balti-

more shall from time to time adopt and designate for that purpose."

This Act contained no direction as to the place of sale, but left that, we think, very properly and wisely, to the judgment and discretion of the City Collector. A comparison of the terms of this Act with the section of the Code of 1878 mentioned above will show the most irreconcilable conflict. This, in connection with the evident purpose of the legislature to provide by local law a different procedure for the sale of land in Baltimore City for the non-payment of taxes, is sufficient, upon familiar principles of statutory construction, to show that the place of sale named in the general law was not intended to control sales made under the *Act of 1878, chapter 227.* We are, therefore, of opinion that the tax sale was valid and its ratification by the Court vested in the purchaser, the Mayor and City Council of Baltimore, under the statute, a good title to the property sold.

Under the authority of the case of *Taylor v. Forrest,* 96 Md. 529, Henry S. Taylor, Collector, had no power to execute a deed to the Mayor and City Council for the property sold by his predecessor, Mr. Webb; but this defect has been cured by *section 2 of the Act of 1904, chapter 281.* This section provided that whenever any property in the City of Baltimore has been sold for taxes, pursuant to law, by one City Collector, and such sale has been reported by the City Collector who made the sale, but the deed for such property has been executed and delivered by the successor in office of the City Collector who made the sale and report as aforesaid, such conveyance shall be as valid to all intent and purposes as it would have been if made by the City Collector who made and reported the sale.

It would have been a perfectly valid exercise of power by the Legislature to have authorized the successor in office of the City Collector to make the deed, and this Act which validates the deed of such Collector cannot be said to violate any of the vested rights of the owner. His rights in the property were divested by the tax sale. Instead of designating some partic-

ular person to execute a deed to the purchaser for the property sold, the Act merely validates the deed already executed. We see no possible objection to this. For the reasons assigned we reversed the judgment, without awarding a new trial.

> *Judgment reversed without awarding a new trial.*