# CIRCUIT COURT NO. 2 OF BALTIMORE CITY.

Filed December 1, 1914.

WILLIAM P. HEIM, ET AL., PETITIONERS, VS.

JACOB W. HOOK, CITY COLLECTOR, AND LEE D. BARNES, PURCHASER.

*Harry M. Benzinger* and *Henry H. Dinneen* for Heim.

*Hawkins & McMechen* for Settles.

*Robert F. Leach, Jr.*, for City Collector.

*William M. Ballou* and *Charles B. Backman* for purchaser Barnes.

AMBLER, J.—

On July 31, 1913, the Collector of Taxes filed in this Court a report stating, in substance, that thirty days prior to the proceedings thereinafter mentioned, bills setting forth the amount of taxes due to the State of Maryland and to the Mayor and City Council of Baltimore, respectively, for the years 1910, 1911 and 1912 on the property No. 870 Raborg street "were delivered to Rosetta, wife of John W. Settles, the owner of such property, at his residence, Twenty-eighth and Simpson streets (Homestead), in the City of Baltimore," and that with such bills notice was given that, unless paid within thirty days therefrom, the property would be surveyed and advertised for sale, and that, pursuant to this notice and after due advertisement, the property was sold at public auction on December 16, 1912, to Lee D. Barnes, the highest bidder. After the usual proceedings in this Court a decree was passed on March 6, 1914, finally ratifying the sale, and on April 2, 1914, the Collector of Taxes executed and delivered a deed conveying the property to the purchaser.

On July 18, 1914, John M. Settles, to whom a ninety-nine year leasehold in 870 Raborg street had been assigned

by the administrators of John W. Settles, subject to an annual rent of sixty dollars, and William P. Heim, as owner of the sixty-dollar ground rent and reversionary interest in the property, filed in this cause a petition alleging certain irregularities in the tax sale and asking that the decree ratifying it be rescinded and the deed from the Collector to the purchaser cancelled.

To this petition answer was made by the City Collector and the Mayor and City Council of Baltimore and by Lee D. Barnes, the purchaser, and at the hearing several witnesses on behalf of the petitioner and of the respondents were examined in open Court.

From the evidence thus taken, it appears that John W. Settles, who died in February, 1913, had for some years owned the ninety-nine year leasehold in this property and was such owner during the years 1910, 1911 and 1912, and up to the time of his death, and that during the whole of that period he and his wife kept a grocery store at the northeast corner of Twenty-eighth and Simpson streets, but had their home, or "residence" on the south side of Twenty-eighth street, about half a block west of Simpson street, and at no time "resided" at the corner where the store was situated.

Section 43 of the City Charter provides that, before advertising property for sale for taxes, the Collector "shall give to the person or persons so in arrears, or to one of them if more than one, or leave at his or her or their residence or last known residence of one of them, and if no such residence be known, there shall be left upon the premises so to be sold for taxes, a statement of his, her or their indebtedness, and not less than thirty days' notice of his intention, if the bill is not paid, to enforce payment thereof by distraint or execution." In other words, before the Collector can advertise for sale this preliminary notice must be (a) served upon the person so in arrear, or (b) left at his residence or last known place of residence, or (c), if no such residence be known, left upon the premises so to be sold; and it must be notice, not of the liability imposed by law, but of the *Collector's intention* to enforce payment. The law makes no provision for service of the notice upon any agent or representative of the taxpayer, however closely related. Since the notice "delivered to Rosetta, wife of John W. Settles, at Twenty-eighth and Simpson streets," as stated in the Collector's report, was neither given to the person, nor left at the place, prescribed by law, it was not such notice as the law requires, and consequently was of no effect.

The respondents, however, urge that, although the Collector's report rests on the notice so delivered to the wife, the evidence shows that in 1911 a tax bill for the year 1910 was "left" on No. 870 Raborg street, the "premises so to be sold," and in 1912 a bill for 1911 taxes was also "left" on the same premises, and that to each of these bills was attached what is called a "last notice," in form as follows:

REAL ESTATE.

(Bring the Bill With You.)

Office Hours: From 9 to 3 o'clock; Saturday, 12 noon.

CITY AND STATE TAX DEPARTMENT.

Baltimore, ...........191..

M.................... or owner:

The Collector having placed your account for taxes in arrear for the years ................now amounting, with interest and costs, to $.............. in my hands for immediate collection, notice is hereby given you that unless such amount is paid within thirty days from this date, the accompanying tax bills will, as soon as practicable, be placed in the hands of the City Surveyor, with instructions to plat the property upon which such taxes are due preparatory to advertising the same for sale.

By order of Collector.

.................... Bailiff.

LAST NOTICE.

Not even if it be assumed that the Collector could lawfully advertise and sell for taxes for the years 1910, 1911 and 1912 upon giving proper notice of his intention to enforce payment of taxes for the years 1910 and 1911 only (McMahon vs. Crean, 109 Md. 652, 667), it remains to consider whether the so-called "last" notice left at 870 Raborg street with the tax bills for 1910 and 1911 was such preliminary notice as the law requires. The witness Brady, a bailiff in the office of the Tax Collector, testified that even after

serving the "last" notice, it has been the invariable practice, before actually proceeding to advertise and sell property for delinquent taxes, to serve also a "final" notice, and that in this instance he himself delivered to Rosetta Settles with the 1912 tax bill—apparently without any bill for either 1910 or 1911 taxes—a "final" notice of the following form:

OFFICE CITY TAX COLLECTOR.

Baltimore, September.... 1912.

NOTICE TO TAXPAYER.

Your property is about to be advertised and sold for the non-payment of taxes for the year 1910. The immediate payment of these 1910 Taxes will stop the advertisement and sale. The delivery of the 1912 bill at this time is to enable me to also includes taxes for that year in the sale.

JACOB W. HOOK, Collector.

Between the two notices there is a marked difference. The "final" notice, issued in the name of the Collector himself is a sharp and distinct warning that the property is "about to be advertised and sold for non-payment of taxes." The "last" notice, signed, not by the Collector, but by a bailiff, says that the "account for taxes in arrear for .certain years, amounting, with interest and costs, to a certain sum, having been placed in the hands of the bailiff for immediate collection, unless such amount is paid within thirty days, the tax bills "will as soon as practicable be placed in the hands of the City Surveyor, with instructions to plat the property upon which such taxes are due preparatory to advertising the same for sale."

If the "last" notice had been the only form of notice in use, it might possibly be considered a substantial compliance with the requirements of the law; for, while it does not explicitly state, it strongly suggests, an intention on the part of the Collector to enforce payment by extreme measures; but Brady's testimony, as well as the Collector's report made to this Court, indicates that it did not really mean that the Collector expected or intended to follow it up with actual proceedings for a sale. The Collector's report mentions that "additional notices were given," but the notice delivered to Rosetta Settles is particularly stated and appears to be relied on as the real and effective notice under the

law; and in view of the settled practice of serving also a "final" notice before actual advertisement and sale, it may well be, as urged by counsel, that the public had learned to consider the "last" notice as a mere warning that further delay in payment would entail the additional cost of a survey and plat, just as the 3 per cent penalty follows failure to pay taxes before the end of July of the year for which they are assessed.

At the foot of the 1910 tax bill is a memorandum as follows: "This bill in arrears July 1, 1910; and, if not paid within 30 days thereafter, a penalty of 3 per cent of the gross amount will be added thereto and payment enforced according to law," and a similar memorandum appears on each of the other tax bills filed as exhibits in the case. Unlike the notice referred to in McMahon vs. Crean (109 Md. 667), which stated that, if the bill was not paid within thirty days *from delivery*, payment would be enforced by distraint or execution, this memorandum apparently means that after the end of July the penalty of 3 per cent will be added and enforced. It surely cannot mean that the Collector will proceed to advertise on or after the first of August, regardless of the date at which the bill may be delivered. At all events no one could be expected to understand it as the declaration of a real intention to pursue that course, when the fact is notorious that, during all the years in which bills have been issued with this warning appended, no step has ever been taken towards carrying such intention into effect until taxes have been in arrear for more than a year at least, and not even then without a further warning. Intention ordinarily means a definite purpose and expectation.

Failure to pay taxes may be due to negligence; but generally it comes from lack of means, and a tax sale means severe loss to those who can least afford it. The Collector has a wide discretion as to the time for applying the drastic remedy, and the legislature probably thought that even the most careless or the most helpless, if notified of the time definitely fixed for their last chance, might then make a supreme effort to avert disaster. However that may be, the law plainly requires the Collector to give notice of his *intention* to enforce payment, and

in my opinion the notices "left on the premises" did not meet that requirement and were quite as ineffective as the one "delivered to Rosetta, wife of John W. Settles." I must therefore hold this sale invalid for want of proper notice.

As I find that the decree ratifying the sale should be set aside on that ground, it is not worth while to consider whether or not the clerk or bailiff in the Tax Collector's office should have informed the administrators of John W. Settles that taxes for prior years had been discharged by a sale of the property, when in December, 1913—more than a year and a day after the sale, but some months before its ratification—they obtained the 1913 tax bill and requested that it be stamped "back taxes paid".

On the respondents' exceptions, I have excluded from consideration all of the testimony in regard to water rent bills, since so far as I can see, the City Solicitor was under no obligation to bear in mind the correspondence about the water rent when some days later he was called on to endorse and file the report of the tax sale.

It would not be just or equitable to return the property to the former owners free and clear of all liability for the unpaid taxes or to set aside the sale without providing for reimbursement of the innocent purchaser. The petitioners recognize this fact, and in their petition declare themselves able, ready and willing to pay all legal charges for taxes against the said property; and although the amount of such charges is nowhere precisely stated, the tax bills filed as exhibits with the Collector's report seem to furnish a means of ascertainment. It appears, too, that the purchaser has collected rent for several months and has made some repairs, but the evidence does not show the amount either of his collections or of his expenditures on the property. It ought not to be difficult for counsel to ascertain and agree upon the amounts thus to be paid by or to the parties respectively, so that all questions may be settled and determined by the final decree. If, however, counsel cannot agree upon the amount, I will sign an order "determining the question of right between the parties and directing an account to be stated on the principle of such determination."