GILL ET UX. *v.* SOMMER ET UX.

[No. 188, October Term, 1947.]

*Decided July 20, 1948.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Paul R. Kach,* with whom was *Paul M. Higinbotham* on the brief, for the appellants.

*B. Harris Henderson,* with whom were *George M. Mullen* and *L. Franklin Gerber* on the brief, for the appellees.

MARKELL, J., delivered the opinion of the Court.

This case, like *Shapiro v. National Color Printing Co.,* 191 Md. 194, 60 A. 2d 679, involves the validity of a tax sale in Baltimore, but unlike that case arises only under the laws in force before the Act of 1943, ch. 761, and the Act of 1941, ch. 540, and the Act of 1937, ch. 511 (section 65 of Baltimore City Charter, 1938 Edition) amending section 48 of the Charter, 1927 Edition. This is an appeal from a judgment for plaintiffs, in an action of ejectment by the taxpayers against the purchasers at the tax sale.

In 1920 plaintiffs, as tenants by the entireties, acquired in fee, by deed from Joseph Fekl and wife, "three lots of ground * * * together described" as beginning at the east corner of Keene Avenue and Center Avenue (later Winthrope Avenue) and running southeasterly 90 feet, with an even depth of 200 feet to the centre of a ten foot alley. On the first sixty feet plaintiffs built a house, which they occupy, No. 3600 Keene Avenue. The whole 90 feet was used and enclosed as a house and yard. The 30 feet was not transferred on the tax books from the name of Fekl to plaintiffs, though until 1929 it was the duty of the clerks of courts to report conveyances to the tax officials for the purpose of such transfer. Code of 1924, Art. 81, sec. 15; Acts of Extra Session, March,

1841, ch. 23, sec. 37 (in Laws of 1840). Whether the 60 feet was transferred does not appear. On the tax books, at and before the time of the tax sale, the property was carried as two properties, 60 feet at the corner as No. 3600 Keene Avenue and the remaining 30 feet as an "unimproved lot". Plaintiffs evidently were unaware (perhaps unmindful) of such separate assessments. In November, 1934 they obtained a building association mortgage on 3600 Keene Avenue (the whole 90 feet, he says) for $500, principally to pay overdue 1933 and 1934 taxes (aggregating $356.56), which the building association paid and deducted from the proceeds of the loan. Evidently the building association, like plaintiffs, was unaware that these taxes on 3600 Keene Avenue did not cover all the property, and that on the southeastern 30 feet 1931, 1932, 1933 and 1934 State and City taxes and 1930 State taxes, all aggregating $89.20, were then in arrears.

A tax sale of the "unimproved lot" was made on February 7, 1935, reported February 7, 1936, and ratified November 21, 1944. The property was conveyed by deed on December 6, 1944, by the Collector to the City and on December 7, 1944, by the City to defendants, who lived across the street from the property. It was sold, under authority of an ordinance approved November 4, 1944, to defendants for $500. They paid a deposit on account in September 1944. Sommer testifies that: In January, 1945 he learned for the first time that the lot had been sold for taxes. No notice of any sale of the property was received by him personally or left at the house or posted on the property. Mrs. Sommer testifies that she never received any notice, by mail or otherwise, of any tax sale of the property.

The records of the Collector's (now Treasurer's) office show, at the time of the tax sale, unpaid 1930 State taxes (83 cents), 1931, 1932, 1933 and 1934 State and City taxes ($7.62, $7.78, $8.53—plus $56.43 paving tax—and $8.01) on the 30 foot lot. From these records were filed with the report of the tax sale three bills for these taxes,

one for 1930, one for 1931, 1932 and 1933, and one for 1934, all in the name of Joseph Fekl, "Location—NES Keene Ave. 60' E. Winthrope Avenue", "improvement—unimproved lot. size lot—30' x 195'." Each of these bills purports to bear on the back, under the caption "THIS IS A FINAL AND LEGAL NOTICE *Personal Delivery Is Being Made As Required By Law,*" a notice "that unless charges are paid within thirty days from this date, the property will be advertised and sold to satisfy the indebtedness," signed "by order of the collector, *J. Goucher,* bailiff. *2-2-33* delivered *Olive Summers, owner, 3600 Keene Avenue. 8-19-33 A/P. Franklin, Jr., set up in presence of A. S. DiDomenico.*" The above italicized parts of the signatures are typewritten. There is no manual signature, initials or other identifying mark. The present employee in charge of tax sales testifies that these records mean that bill for these taxes were delivered by Goucher in person to Olive Summers, owner, 3600 Keene Avenue, on February 2, 1933, and were posted on the property by Franklin in the presence of DiDomenico on August 19, 1933. The report of sale alleges that bills [1] were mailed in accordance with Chapter 229 of the Acts of 1916 (sec. 54, Charter, 1938 Ed., which provides that any notice required by law to be given by the Collector shall be deemed *prima facie* to be served if mailed in a prescribed manner) or [2] were left at the last known residence of one of the persons in arrears or [3] were left upon the premises. The transcript also contains, with little explanatory testimony, four bills, with no manual signatures or initials, (1) for 1930 and 1931 State and City taxes, with notice signed "*J. Goucher,* Bailiff 2/2/33 Delivered *Olive Summers, 3600 Keene Ave., owner*", (2) for undated paving tax [same as amount for 1933 filed with report of sale], with notice similarly signed, (3) same, with notice signed "*A. P. Franklin, Jr.,* Bailiff. Delivered *Set up in presence of A. S. DiDomenico Aug. 19, 1933*", (4) for 1931 and 1932 State and City taxes, with notice similarly signed.

Neither Goucher nor Franklin testified. No manual signature or initials of either were offered in evidence and identified by anyone. DiDomenico testified, but had no personal recollection at all about this particular case. He handled hundreds in which premises were posted in his presence. Neither he nor Franklin were regular employees of the Collector's Department. They only worked there about two or three months in a year. In slack seasons they used men from other departments.

The Collector, before advertising property for sale, was required to [1] give to the person or persons in arrears, or to one of them *or* [2] mail pursuant to the Act of 1916, ch. 229; Charter, 1938 Ed., sec. 54, *or* [3] leave at his or her or their residence or last known residence *and* [4] if no such residence is known, leave upon the premises, not less than thirty days "notice of his intention, if the bill is not paid, to enforce the payment thereof by distraint or execution." Charter, 1938 Ed., sec. 56. The report of sale alleged, in the alternative, notice [2], [3] or [4]. The three bills filed with the report purport to show notices [1] and [4]. Plaintiffs deny any notice at all. No testimony shows any notice or rebuts plaintiffs' testimony. The three bills filed with the report and the four other bills in the transcript constitute two sets of records, each of which contains inherent contradictions and both of which are mutually contradictory. The 1934 bill purports to show two impossible notices, viz., on February 2, 1933 and August 19, 1933, months before the 1934 tax rate was determined. The other two bills filed with the report and two other bills in the transcript show inconsistent notices (*a*) delivered on February 2, 1933 or (*b*) posted on August 19, 1933, viz., (*a*) and (*b*) 1930 State taxes only 1931, 1932 and 1933 State and City taxes, (*a*) 1930 and 1931 State and City taxes, (*b*) 1931 and 1932 State and City taxes.

Before 1872 it was necessary for a purchaser at a tax sale to show "*affirmatively* that all the provisions of the statute, authorizing the sale, had been strictly complied with." In 1867 report and ratification of a tax sale was

required, and since the Act of 1872, ch. 384 (until 1943 or in Baltimore 1941), the statute expressly provided that the burden of proof shall be on the exceptant to show the sale to be invalid. "The effect, therefore, of the order of ratification is only *prima facie* in support of the sale, not conclusive; the sale, under the order of confirmation, affording evidence of a good title, until successfully assailed by evidence showing illegality in the proceedings upon which it is founded." *McMahon v. Crean,* 109 Md. 652, 665, 666, 71 A. 995, 997; *Steuart v. Meyer,* 54 Md. 454, 465, 466; *Shapiro v. National Color Printing Co., supra.*

It is not necessary to weigh nicely the effect of the statutory burden of proof or the ordinary presumption of regularity of official action (*a*) in the absence of opposing evidence or (*b*) in support of conflicting testimony. As to conflicting testimony see *Wagner v. Shanks,* 59 Md. 313, 319, 320, 323, 324. In the instant case plaintiff's testimony is not contradicted by any witness, and is supported by its own inherent probability and the inherent weakness of the records of impossible or contradictory notices purporting to have been given on February 2, 1933, or posted on August 19, 1933. When plaintiffs in 1934 mortgaged their property (all of it, they thought) to pay taxes, it is incredible that they would knowingly leave the relatively small amount of taxes on the 30 foot unpaid and several years in arrears. Defendants argue that the very fact that the records contain the name "Oliver Summers" indicate that Goucher must have got it from her when he gave her notice. In view of plaintiffs' evident good faith, the improbability of the various notices, the fact that two of them could not have been given at the times stated, and the absence of evidence when between February 2, 1933 and the report of sale on February 7, 1936, the dates of the alleged notices were actually recorded, we think this ingenious surmise quite inadequate as evidence to deprive plaintiffs of their property. If resort is had to surmise, various guesses might be made as to possible sources of this in-

formation in the course of four years.

The trial court found that "the preponderance of evidence indicates that [the notice] was given as set forth in the report" of sale. "The judgment of the trial court shall not be set aside on the evidence, unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." General Rules of Practice and Procedure, Part 3, Trials, Rule 9 (c). We do not set aside the judgment of the trial court, but affirm it on different grounds. If the finding that notice was given depended upon the credibility of opposing witnesses, we would be slow to differ with the trial court. But as our finding depends upon the relative weight of plaintiffs' uncontradicted testimony and the uncontradicted circumstantial evidence regarding the records, the opportunity to see and hear the witnesses has not its usual importance.

In view of our conclusion that the evidence fails to show that notice was given, it is unnecessary to consider the lower court's decision that the description in the alleged notice was meaningless because of failure to indicate whether it ran northwest or southeast from the point of beginning. It is also unnecessary to pass upon other objections by plaintiffs to the validity of the sale.

The judgment for plaintiffs was properly conditioned upon refund by plaintiffs to defendants of the taxes and other expenses paid by defendants.

*Judgment affirmed, with costs.*